**JUAN L. ROCHA**
Rocha Law Office
Arizona Bar No. 025039
P.O. Box 5965
Mesa, Arizona 85211-5965
Tel: (480) 855-1759
Fax: (855) 327-4858
jrocha.law@gmail.com
*Attorney for Defendant*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | Case No. 4:15-cr-976-CKJ (BJM) |
|---|---|
| Plaintiff, | **AMENDED MOTION TO DISMISS INDICTMENT FOR UNLAWFUL EXCLUSION UNDER TITLE 8 U.S.C. § 1326(d)** |
| -vs- | |
| Ramon Ramos-Zepeda, | |
| Defendant. | (Oral Argument Requested) |

Defendant, Mr. Ramos-Zepeda, through undersigned counsel, and under Fed. R. Evid. 12(b)(2), and *United States v. Raya-Vaca*, 771 F.3d 1195 (9th Cir. 2014), respectfully moves this Court to dismiss the Indictment pending against him because his previous order of removal was based on an unlawful exclusion. Mr. Ramos-Zepeda's request is supported by the following Memorandum of Points and Authorities. Mr. Ramos-Zepeda also requests the right to supplement his motion should additional evidence not presently disclosed to him by the government later become known to him.

Excludable delay under 18 U.S.C. § 3161(h)(1)(D) will result from this motion or from an order based thereon.

RESPECTFULLY SUBMITTED: December 15, 2015.

                                          *s/Juan L. Rocha*
                                          **JUAN L. ROCHA**
                                          Attorney for Defendant

I.         **STATEMENT OF FACTS**

On May 27, 2015, the United State Attorney's Office indicted Mr. Ramon Ramos-Zepeda with one count of violating 8 U.S.C. § 1326(a), Illegal Re-entry, enhanced by (b)(2). (Docket No. 6). The Indictment alleges that on January 15, 2009, Mr. Ramos-Zepeda was ordered removed from the United States through Nogales, Arizona. *Id*.

To support the order of exclusion, deportation, or removal, the government proffers the following documents:

a) Form I-860, Notice and Order of Expedited Removal (Exhibit 1);[1]

b) Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act, (Exhibit 2);

c) Jurat for Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act. (Exhibit 3).

The Notice of Expedited Removal, dated January 12, 2009, while signed by Border Patrol agents, is not signed by Mr. Ramos-Zepeda, nor is there any information the form was read to him.[2] (*See* Exhibit 1.) Nor is there any information he understood the reason for his expedited removal. The Record of Sworn Statement contains several questions and answers concerning Mr. Ramos-Zepeda's immigration history, including his

---

[1] Mr. Ramos-Zepeda was ordered removed pursuant to § 235(b)(1) of the Immigration and Nationality Act [8 U.S.C. § 1225(b)(1)]; in that he did not possess or present valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document. And he entered the United States illegally with the intent to reside in the United States.

[2] On November 23, 2015, undersigned counsel viewed Mr. Ramos-Zepeda's immigration dossier, colloquially known as the "A-file," at the U.S. Attorney's Office. In that dossier, there are several documents, including an I-213 from 2009, which explains the circumstances of his arrest in 2009 and a narrative about an extradition to California, but no information concerning the expedited removal order. The government has agreed to give undersigned copies of those documents, but, as of today, have not received that disclosure.

declaration he had previously been in the United States. (*See* Exhibit 2.) But there is no information he was advised he could withdraw his application for admission. *Id.* The "Jurat" does not contain any information about his inadmissibility to the United States, even though it's the only form he signed and that says was read or had read to him. (*See* Exhibit 3.) There are no other documents associated with his expedited removal proceedings.

Because Mr. Ramos-Zepeda's expedited removal order did not comply with the regulations instructing the immigration officer to advise the individual facing removal of the charge against him and permit him to read the statement, even though he had plausible grounds for immigration relief, in violation of his due process rights. The expedited removal order is thus invalid and this Court should therefore dismiss the Indictment levied against Mr. Ramos-Zepeda.

## II. LEGAL PRINCIPLES FOR COLLATERALLY ATTACKING A PREVIOUS ORDER OF REMOVAL UNDER § 1326(d).

For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326(a), the government must establish that the defendant "left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1079 (9th Cir. 2011). Any defendant indicted for violating § 1326 has the right to mount a collateral attack on the lawfulness of his prior deportation or exclusion order before any such removal order may be used to prove the removal element of the 1326(a) offense. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837 (1987); and *United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1999) (same). The Supreme Court has held that a deportation order can establish an element of a crime only if the alien had the opportunity to obtain meaningful judicial review. *Mendoza-Lopez*, 481 U.S. at 837.

A prior removal "must be valid, legal, and comport with due process requirements to sustain a conviction under Section 1326." *United States v. Lopez*, 762 F.3d 852, 858 (9th Cir. 2014); *see also Mendoza-Lopez*, 481 U.S. at 837-38 ("Our cases establish that where a determination made in an administrative proceeding is to play a critical role in

3

the subsequent imposition of a criminal sanction, there must be some meaning judicial review of the administrative proceeding."). Section 1326 sets out three requirements a defendant must satisfy to challenge the validity of a prior removal order. 8 U.S.C. § 1326(d). To sustain a challenge to an indictment under § 1326, a defendant must demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings "improperly deprived [him] of the opportunity for judicial review"; and (3) the removal order was "fundamentally unfair." 8 U.S.C. § 1326(d). To satisfy the third prong–that the order was fundamentally unfair–the defendant bears the burden of establishing both that the "deportation proceeding violate[d] [his] due process rights" and that the violation caused prejudice. *United States v. Leon-Leon*, 35 F.3d 1428, 1431 (9th Cir. 1994).

**III.      ARGUMENT**

      ***A.     Mr. Ramos-Zepedas's Was Entitled to Due Process in the Form of Notice of the Charge He Faced and an Opportunity to Respond, and Because He Could Plausibly Have Been Granted Relief in the Form of Withdrawal of his Application (And Even Cancellation of Removal); This Court Should Therefore Dismiss the Indictment Levied Against Him Since the Removal Order is Invalid and Cannot Serve as the Predicate for the 8 U.S.C. § 1326(a) Charge.***

**(A) Deprivation:**

Because Mr. Ramos-Zepeda's removal was an expedited removal, Ninth Circuit precedent compels the conclusion that administrative review was exhausted and judicial review was deprived. As the Ninth Circuit stated in *Raya-Vac*a:

> "[T]he statute governing expedited removal proceedings afforded Raya-Vaca no opportunity for administrative or judicial review. *See, e.g.*, 8 U.S.C. § 1225(b)(1)( C) ("Except as provided in the subparagraph on credible-fear interviews, a removal order . . . is not subject to administrative appeal . . . .") *id*. § 1225(b)(1)(A)(i) ("If an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible . . . ., the officer shall order the alien removed from the Untied States without further hearing or review.") *See also United States v. Barajas-Alvarado*, 655 F.3d 1077, 1082 (9th

>Cir. 2011) ("The Immigration and Nationality Act (INA) precludes meaningful judicial review of the validity of the proceedings that result in an expedited removal order.") We therefore conclude that Raya-Vaca exhausted all available administrative remedies and was deprived of the opportunity for judicial review."

*Raya-Vaca*, 771 F.3d at 1202; *see, also, e.g., Walters v. Reno*, 145 F.3d 1032, 1044 n.8 (9th Cir. 1998) (questioning whether a showing of prejudice was necessary where alien was completely deprived of any hearing).

**(B) Fundamental Fairness**

"[T]he Due Process Clause applies to all 'persons' within the united States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Immigration proceedings, although not subject to the full range of constitutional protections, must conform to the Fifth Amendment's requirement of due process." *Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1162 (9th Cir. 2005). [T]he Due Process Clause applies to all who have entered the United States–legally or not[.]" *Raya-Vaca*, 771 F.3d at 1203. Like the defendant in *Raya-Vaca*, Mr. Ramos-Zepeda "was entitled to expedited removal proceedings that conformed to the dictates of due process." *Id*. at 1203.

Mr. Ramos-Zepeda had a due process right to notice and an opportunity to respond to the allegations in the Expedited Removal. Indeed, there is no evidence the Border Patrol agent complied with the regulation at issue by advising him of the charge against him, or explain to him the nature of the removal proceedings and reading to him. (*See* Exhibit 1.) Nor is there an evidence the agent allowed him to read the Notice and Order of Expedited Removal, let alone serve him with a copy of it. (*See* Exhibit 1.) The Expedited Removal Order from 2009 reveals that government agents failed to advise him of the charge(s) against him and to read to him the sworn statement of the officer prepared in violation of federal law. *See* 8 C.F.R § 235.3(b)(2)(i) ("The examining immigration officer shall advise the alien of the charges against him . . . , and the alien shall be given an opportunity to respond to those charge in the sworn statement."); *see also id.* (requiring the examining officer to take the

aliens' sworn statement and to "have the alien read (or have read to him or her) the statement"). As the panel explained in *Raya-Vaca*, "[d]ue process always requires, at a minimum, notice and an opportunity to respond." *Raya-Vaca*, 771 F.3d at 1204. Because Mr. Ramos-Zepeda was protected by the Due Process Clause when he faced removal, any failure to inform him of the charge against him and provide him the opportunity to review the sworn statement constituted a violation of his due process rights. *Id*. (citing *Yamataya v. Fisher*, 189 U.S. 86, 94, 101 (1903) (concluding that alien who had entered the country, allegedly illegally, several days prior to apprehension had to receive "all opportunity to be heard upon the questions involving [her] right to be and remain in the United States" comport with due process"); *see, also, United States v. Vidal-Mendoza*, 705 F.3d 1012, 1015-16 (9th Cir. 2013) (holding, without prejudice inquiry, that immigration judge's failure to inform alien of eligibility for relief, as required by regulation, violated due process).

Moreover, while Mr. Ramos-Zepeda signed the Jurat, there is no evidence he understood what he was signing. He is a monolingual Spanish-speaker. But the Jurat specifically says no Spanish interpreter was provided to him. (*See* Exhibit 2.) Moreover, whatever questions he was asked by the Border Patrol officer did not speak to his inadmissibility. *See Raya-Vaca*, 771 F.3d at 1205 ("the Record of Sworn Statement and Jurat together totaled four pages, and the Jurat–the sole page Raya-Vaca acknowledged having read–including only four questions he was asked and answered, none of which spoke to his admissibility"). Nor did the Jurat indicate he had the opportunity to withdraw his application for admission and be allowed to return to his native country. *See* 8 U.S.C. § 1225(a)(4). If any evidence "raises a reasonable possibility that [the alien] may be eligible for relief, the [immigration judge] must advise the alien of this possibility and give him the opportunity to develop the issue." *Moran-Enriquez v. INS*, 884 F.2d 420, 423 (9th Cir. 1989); *see, also, e.g., In re Cordova*, 22 I&N Dec. 966 (BIA 1999) (*en banc*) (emphasizing the absolute duty

of an immigration judge to inform aliens of any relief they are statutorily eligible to receive); *see, also, United States v. Leon-Paz*, 340 F.3d 1003 (9th Cir. 2003) (same).

Against this factual background, because the Border Patrol agent failed to advise Mr. Ramos-Zepeda of the charge against him (*See* Exhibit 1), and permit him to review the sworn statement, the government violated his due process rights. *See Raya-Vaca*, 771 F.3d at 1205-06 ("Because the regulatory violation here constituted a denial of Raya-Vaca's right to notice and an opportunity to respond, no showing of prejudice is necessary to establish a due process violation."); and *United States v. Proa-Tovar*, 975 F.2d 592, 594-95 (9th Cir. 1992) (*en banc*) (there are circumstances when the administrative proceedings were so flawed that effective judicial review will be foreclosed" making a showing of prejudice unnecessary).

**(C) Prejudice**

To succeed in demonstrating that the 2009 Expedited Removal Order was fundamentally unfair, Mr. Ramos-Zepeda must also establish that he suffered prejudice as a result of the entry of that Order. *See United States v. Jimenez-Marmolejo*, 104 F.3d 1083, 1085 (9th Cir. 1996). To do so, Mr. Ramos-Zepeda must show he had "plausible grounds for relief" from the removal order. *Id.* at 1086. (the defendant need only show he has a "plausible ground" for relief, not that he would have received § 212(c) discretionary relief, defendant was prejudiced by the invalid waiver of his right to appeal). But a defendant "does not have to show he actually would have been granted relief." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000).

To assess whether a defendant has shown that he would plausibly have been granted a discretionary form of relief from removal, the court follows a two-step process. *See Raya-Vaca*, 771 F.3d at 1206 (citing *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013). First, the court identifies "the factors relevant tot he [agency's] exercise of discretion for the relief being sought." *Raya-Vaca*, 771 F.3d at 1206. Second, the

court determines "whether, in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of the [defendant's] own case," it was plausible that the agency official considering the defendant's case would have been granted relief from removal. *Id*. The plausible grounds for a claim does not impose a probability requirement. *Id*. at 1207. For determining whether a defendant has plausible relief in the form of withdrawal of application for admission, this court looks to the Inspector's Field Manuel. *See United States v. Barajas-Alvarado*, 655 F.3d 1077 (9th Cir. 2011).

The Inspector's Field Manuel enumerates six factors relevant to the question of relief: "(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility against the alien; (5) age or poor health of the alien; and (6) other humanitarian or public considerations." *Barajas-Alvarado*, 655 F.3d at 1090.

Like the defendant in *Raya-Vaca*, Mr. Ramos-Zepeda was never given the opportunity to withdraw his application for admission even though his circumstances were very similar. In fact, Mr. Ramos-Zepeda was more deserving of the withdrawal. *See Raya-Vaca*, 771 F.3d at 1206 ("an individual granted leave to withdraw his application for admission may exit the United States voluntarily and without a removal order[,]" under 8 C.F.R. § 1235.4).

First, like the defendant in *Raya-Vaca*, but unlike the defendant in *Barajas-Alvarado*, Mr. Ramos-Zepeda committed no fraud or other deliberate fraud when entering the United States. This fact is a crucial consideration that according to the Field Manuel, "'ordinarily' militates against withdrawal–and a consideration of singular importance in *Barajas-Alvarado* [ ] is absent here." *Raya-Vaca*, 771 F.3d at 1208.

Second, unlike the defendant in *Raya-Vaca*, Mr. Ramos-Zepeda had no immigration history. In *Raya-Vaca*, the defendant had six illegal reentries and a 2009 stipulated removal order. Yet the Ninth Circuit did not believe this immigration history

| 1  | undermined that defendant's prejudice claim. *Id*. Mr. Ramos-Zepeda had never been
| 2  | previously removed from the United States and had never been convicted, let alone charged,
| 3  | with illegal reentry. Put simply, there had never been a previous finding of inadmissibility.
| 4  | Even if Mr. Ramos-Zepeda had been previously removed, such a fact would not be
| 5  | dispositive against withdrawal since the government has conceded, in a published opinion,
| 6  | "that recidivist immigration violators are permitted to withdraw their applications for
| 7  | admission[.]" *Id.*
| 8  |    Third, Mr. Ramos-Zepeda intended to violate the law by the fact he entered the
| 9  | United States through a place other than a port of entry. But like the panel concluded in
| 10 | *Raya-Vaca*, this was not a dispositive fact either. *Id*.
| 11 |    Fourth, Mr. Ramos-Zepeda had the ability to easily overcome his ground of
| 12 | inadmissibility. While the defendant in *Raya-Vaca*, who had no petitions pending and not
| 13 | married to a United States citizen, he did have a long-time girlfriend and his brother were
| 14 | United States citizens "suggest[ing] that Raya-Vaca may have had a relatively
| 15 | straightforward path to legal status, a relevant consideration given the Manuel's instruction
| 16 | to 'consider all facts and circumstances related to the case.'" *Id*. (citing INS Inspector's Field
| 17 | Manuel § 17.2(a); and 8 C.F.R. § 204.2(g)). Here, Mr. Ramos-Zepeda had a child who was
| 18 | a United States citizen. Accordingly, he was eligible for Cancellation of Removal for Certain
| 19 | Non-Permanent Residents under 8 U.S.C. § 1229(b). He had been living in the United States
| 20 | continuously for ten years, had a qualifying relative (his child), and did not have any
| 21 | aggravating felonies. While Mr. Ramos-Zepeda did have a prior conviction, under Cal. Penal
| 22 | Code § 288(a), that offense would not have barred him from relief. In fact, there is a waiver
| 23 | of inadmissibility for that specific offense under 8 U.S.C. § 1182(h). *See Blandino-Medina*
| 24 | *v. Holder*, 712 F.3d 1338, 1342 (9th Cir. 2013) (a discretionary waiver is available for aliens
| 25 | who have been convicted of crimes involving moral turpitude like California Penal Code §
| 26 | 288(a), Lewd and Lascivious Act with a Minor). Even if the government had denied him that

petition, "[g]iven the highly discretionary nature of this determination, it is possible that a future adjudicator will 'balance the equities and adverse matters' in a manner different than did the original [immigration judge]." *Id*. at 1342. In short, Mr. Ramos-Zepeda had a straightforward path to applying for legal permanent residency.

Fifth, while Mr. Ramos-Zepeda's good health and age do not provide a basis for plausible relief, his age and good health are factors that do not make him inadmissible. *See* Immigration and Nationality Act (INA) sec. 212(a)(1)), Health-Related Grounds of Inadmissibility; 42 C.F.R. 34.2(b).

Sixth, like the defendant in *Raya-Vaca*, Mr. Ramos-Zepeda's case presents significant humanitarian considerations in favor of relief. He had a long-time partner at the time of his expedited removal in 2009 and a United States citizen son. "There is a compelling humanitarian interest in keeping families united, so the humanitarian and public interest factors weigh significantly in [defendant's] favor." *Raya-Vaca*, 771 F.3d at 1208 (internal quotations omitted); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (observing that an alien's "right to rejoin [his] immediate family . . . ranks high among the interests of the individual"); and 8 U.S.C. § 1182(d)(11) (INA "family unity" provision for the waiver of inadmissibility recognizing that "assur[ing] family unity" is in the public interest).

Suffice it to say, these factors weigh in Mr. Ramos-Zepeda's favor for immigration relief. *See Raya-Vaca*, 771 F.3d at 1209 ("there have been individuals with a conviction for false statement to a federal officer, no pending petitions for legal status, and a prior exclusion order can be permitted to withdraw his application for admission–and thus relief under such circumstances was plausible").

///

///

///

## IV. CONCLUSION

Because Mr. Ramos-Zepeda entered the country at the time of his 2009 expedited removal proceedings and was entitled to due process in the form of notice of the charge he faced and an opportunity to respond; and because Mr. Ramos-Zepeda could plausibly have been granted relief in the form of withdrawal of his application (if not, could have applied for Cancellation of Removal for Certain Non-Permanent Residents), he has shown he had some evidentiary basis for relief from his 2009 expedited removal order. Therefore this court should dismiss the Indictment levied against him since said removal order is invalid and cannot serve as the predicate for the 8 U.S.C. § 1326(a) charge.

RESPECTFULLY SUBMITTED: December 15, 2015.

       *s/Juan L. Rocha*
       **JUAN L. ROCHA**
       Attorney for Defendant

I hereby certify that on December 15, 2015, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal to the following ECF registrants:

The Honorable Cindy K. Jorgenson
United States District Court Judge

Ms. Kathryn Hurtado
Assistant United States Attorney

Copy Mailed to:

Mr. Ramos-Zepeda
Defendant