JOHN S. LEONARDO
United States Attorney
District of Arizona
KATHRYN C. FURTADO
Assistant U.S. Attorney
Arizona State Bar # 025994
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: kathryn.furtado@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States America,<br><br>        Plaintiff,<br><br>vs.<br><br>RAMON RAMOS-ZEPEDA,<br><br>        Defendant. | CR 15-00976-TUC-CKJ(BJM)<br><br>AMENDED RESPONSE TO AMENDED MOTION TO DISMISS INDICTMENT FOR UNLAWFUL EXCLUSION UNDER TITLE 8 U.S.C. 1326(d) |

Pursuant to Fed. R. Evid. 12(b), the United States, by and through John S. Leonardo, United States Attorney for the District of Arizona, and Kathryn C. Furtado, Assistant United States Attorney, hereby respectfully requests this Court deny the defendant's motion to dismiss the indictment. The defendant's due process rights were respected and his 2009 expedited removal was valid. In support of our response, the government respectfully submits this Memorandum of Points and Authorities.

**I. Relevant Facts and Procedural History**

A. Defendant's Citizenship and Prior Conviction

The defendant was born on August 9, 1982 in Michoacan, Mexico. He is a citizen of the Republic of Mexico. On September 9, 2005, the defendant was convicted of California Penal Code § 288a: Oral copulation. An information filed on June 22, 2005

charged the defendant with multiple acts of sexual intercourse in violation of California Penal Code § 261.5(D), a lewd and lascivious act upon a child in violation of California Penal Code § 288(A), and digital penetration of the anus or genitals of a child in violation of California Penal Code § 289(H).  The defendant was represented by counsel: Jeff Boyarsky.  The defendant was sentenced to six months of jail followed by three years of probation, and he was required to register as a sex offender, pursuant to California Penal Code § 290.  As a condition of probation, the defendant was directed not to re-enter the United States illegally if deported.

Per his conviction, the defendant was given a self-surrender date of March 10, 2006. On March 8, 2006, the court modified the self-surrender date to April 7, 2006.  On April 6, 2006, the court modified the self-surrender date to May 19, 2006.  It is unclear from the records if the defendant ever surrendered himself to custody.  On May 2, 2008, an affidavit of probation violation and a motion for bench warrant were filed.  The court issued a warrant, and specified a "no bail" status.  The warrant is currently outstanding[1].

B. <u>2009 Expedited Removal</u>

On January 12, 2009, the defendant was apprehended by United States Border Patrol agents approximately 30 miles north of the Mexico/United States border, near Sonoita, AZ.  The defendant admitted to being a citizen of Mexico, without any permission or documentation to enter/remain in the United States.  The defendant admitted to crossing the international border fence without inspection and without passing through a designated port of entry on January 9, 2009.  The defendant was advised of his consular rights pursuant to Article 36(a)(B) of the Vienna Convention. The defendant declined to exercise his consular rights.  The defendant stated that he did

---

[1] Redwood City, CA has declined extradition.

not fear persecution or torture if returned to his home country of Mexico. The defendant claimed to have no close family ties in the United States. On January 12, the defendant was given an "A" number and processed for an expedited removal.

On January 12, 2009, the defendant was advised of his administrative rights and criminal rights under *Miranda* as they related to his presence in the United States. The defendant waived his rights and agreed to speak to U.S.B.P agents without the presence of counsel. An U.S.B.P. agent named: Anthony S. Rogers spoke to the defendant in the "Spanish" language and reviewed the "Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act" form. The agent advised the defendant that he did not "appear to be admissible or to have the required legal papers authorizing [his] admission to the United States." The defendant was told that he may be removed from the country if determined to be inadmissible. The agent then asked the defendant if he understood his rights and consequences, and if he was willing to answer questions. The defendant stated that he did understand what was said to him, and that he was willing to answer questions. The defendant then denied any claim to U.S. citizenship, and denied having any legal authority to be in the United States. The defendant stated that he illegally crossed the border fence and has previously illegally entered the United States. The defendant failed to give a U.S. address. The defendant admitted to being arrested previously, for "being with a minor." The defendant stated that he spent 4 months and 3 days in custody as a result of that arrest. The defendant stated that he did not complete his probation. The defendant denied any prior deportation. The defendant stated he was going to Red Wood City, CA to find work. The defendant denied any fear or concern about returning to Mexico, and denied that he would be harmed if returned. The defendant then signed the affidavit acknowledging that each page of the statement was read to him. (Exhibit 1: I-867A, dated January 12, 2009, Bates Stamp page 13-16).

On January 12, 2009, after arresting the defendant and during the U.S.B.P.

processing, the defendant was determined to have an outstanding warrant for his arrest. This warrant was issued on May 2, 2008 for the defendant's probation violation stemming from his 2005 conviction. When U.S.B.P. initially contacted the warrant's issuing authority: the Sheriff's Office Redwood City, they confirmed the warrant was still active and advised that they would extradite the defendant. As such, U.S.B.P. turned the defendant over to the local police department: the Santa Cruz Sheriff's Department, on January 12, 2009. The defendant's "A-File" was created and then sent to central filing.

On January 13, 2009, the Santa Cruz Sheriff's Department returned the defendant to U.S.B.P. The Sheriff's Office Redwood City, CA decided to decline to extradite the defendant. Originally, the defendant was to be processed for a violation of 18 U.S.C. 1325. However, on January 14, 2009, since 48 hours had passed since the time of arrest, criminal charges could not be initiated. U.S.B.P. then began an administrative removal process using the investigation and information gained on January 12, 2009.

On January 15, 2009, the defendant was personally served with the Determination of Inadmissibility." This document provided the basis for inadmissibility, pursuant to 8 USC 1225(B)(1)(7)(A)(i)(I): the defendant did not possess or present any valid documents which permitted legal entry, and he had entered the U.S. illegally with the intent to reside in the United States. (Exhibit 2: I-860, dated January 12, 2009, served January 15, 2009, Bates Stamp page 12) The defendant was advised that he was found to be inadmissible to the United States under provision 212(a) of the Immigration and Nationality Act. His signed and acknowledged this document and an agent verified his removal on January 15, 2009. (Exhibit 3: I-296, dated January 12, 2009, served January 15, 2009, Bates Stamp page 11)

C. Charged Offense

On May 1, 2015, the defendant was apprehended by United States Border Patrol agents while hiding in a small grove of trees. The defendant was seen, with another

subject, crossing the border road which was immediately north of the international border fence and approximately 400 meters east of the Lukeville Port of Entry.  The defendant admitted to being a citizen of Mexico, without any permission or documentation to enter the United States.  The defendant admitted to crossing the international border fence without inspection or without passing through a designated port of entry. He admitted to entering on May 1, 2015.  The defendant was advised of his consular rights pursuant to Article 36(a)(B) of the Vienna Convention.  The defendant declined to exercise his consular rights.  The defendant stated that he did not fear persecution or torture if returned to his home country of Mexico.

On May 2, 2015 @ 1:39AM, the defendant was advised of his criminal rights pursuant to *Miranda*, and invoked his rights thereby declining to answer any further questions without the presence of an attorney.  On May 2, 2015, the defendant was advised of his administrative rights related to his "illegal re-entry in to the United States." An U.S.B.P. agent named: Juan Ujueta spoke to the defendant in the "Spanish" language and provided such rights.  The administrative rights discussed included a right to silence, and advice that whatever the defendant said could be used against in him "in court, or in any immigration or administrative proceeding."  The defendant invoked his right to remain silent.  The defendant then signed the affidavit acknowledging the statement was read to him.  (Exhibit 4: I-215B N, dated May 2, 2015, Bates Stamp page 10).  The defendant's prior order of removal was reinstated.  On May 27, 2015, the defendant was indicted for a violation of 8 U.S.C. 1326(b)(1).

**II. Argument**

Defendant has now filed this motion to dismiss the indictment alleging the defendant's "prior order of removal was based on an unlawful exclusion," pursuant to Fed. R. Evid. 12(b)(2) and *United States v. Raya-Vaca*, 771 F.3d 1195 (9th Cir. 2014).  In a criminal proceeding, a Defendant may not challenge the validity of a deportation order

unless the alien demonstrates that: (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d).

The government understands defendant's motion to challenge prongs (2) and (3) of 8 U.S.C. § 1326(d). The defendant alleges a due process violation claiming he was not given an opportunity to respond nor notice of the charges he faced in 2009 (prong 2), and that he could have been granted another form of relief in 2009 (prong 3). The defendant is incorrect. His motion should be denied.

A. No Due Process Violation: Lawful Expedited Removal

In an expedited removal, there is no right to judicial review of the deportation order. As clarified by the Ninth Circuit, 8 U.S.C. § 1252(a)(2)(A) "severely limit[s] both contemporaneous and later tampering with the results that flow from [expedited] removal orders." *Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 818-19 (9th Cir. 2004). It is only "if the alien challenges the expedited removal order as 'fundamentally unfair,' and the order is to 'play a critical role in the subsequent imposition of a criminal sanction,'" that an expedited removal order can be judicially reviewed. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1085 (9th Cir. 2011).

Expedited removals do not, by their nature, violate due process. <u>U.S. v. Garcia-Martinez</u>, 228 F.3d 956, 960-64 (9th Cir. 2000). Rather, an alien must make some showing of "defects in his underlying deportation proceeding." Id. at 960. <u>Raya-Vaca</u> sets out the process which, if followed, protects and ensures the defendant's due process rights during an expedited removal.

In *Raya-Vaca*, the court explains: "an expedited removal proceeding under 8 U.S.C. § 1225 allows immigration officers to (1) determine whether certain aliens are inadmissible, and (2) enter removal orders, generally without hearing or further review.

Two classes of individuals are subject to expedited removal proceedings. Originally, only aliens "arriving" in the United States were subject to the proceedings. However, the Department of Homeland Security (DHS) has expanded the reach of expedited removal proceedings to aliens who have entered the United States, as long as they (1) "are physically present in the U.S. without having been admitted or paroled," (2) are discovered "within 100 air miles" of the United States border, and (3) cannot establish that they have been "physically present in the U.S." for the fourteen days prior to the encounter with immigration authorities. All such aliens are deemed "applicants for admission" into the United States, regardless of whether they seek to enter at a port of entry or have already entered the country. 8 U.S.C. § 1225(a)(1).

During an expedited removal proceeding, an immigration officer must:

(1) conduct an inspection and determine whether the alien is inadmissible because the alien (1) has made a material misrepresentation to gain admission into the United States, (2) has "falsely represent[ed]" himself to be a United States citizen, or (3) does not possess a "valid entry document."
(2) When making a finding of inadmissibility, the examining immigration officer must "create a record of the facts of the case and statements made by the alien." 8 C.F.R. § 235.3(b)(2)(i).
(3) The officer "shall ... have the alien read (or have read to him or her) the statement." *Id*.
(4) The officer "shall advise the alien of the charges against him or her on

>   Form I–860, Notice and Order of Expedited Removal, and
>
>   (5) the alien shall be given an opportunity to respond to those charges in the sworn statement." *Id.*
>
>   (6) Then, if the officer determines the alien to be inadmissible, "the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum ... or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). (<u>*List added.*</u>)"

The defendant claims there is "no evidence that the Border Patrol agent complied with the regulations at issue by advising him of the charge against [the defendant], or explain to him the nature of the removal proceedings and reading to him." The defendant claims there is no "evidence the agent allowed [the defendant] to read the notice and order of expedited removal, let alone serve him with a copy of it." The defendant claims that while he signed the I-867 form, there is "no evidence that he understood what he was signing." Finally, the defendant states "no Spanish interpreter was provided" to the defendant. (Dkt. 29 at 5-6)

In the instant case, the 2009 records reveal that the immigration officer conducted an inspection and determined that defendant was inadmissible because "(3) [the defendant did] not possess a "valid entry document." On January 12, 2009, the defendant was apprehended by United States Border Patrol agents approximately 30 miles north of the Mexico/United States border, near Sonoita, AZ. The defendant admitted to being a citizen of Mexico, without any permission or documentation to enter the United States. The defendant gave no U.S. address, and the defendant admitted to crossing the international border fence without inspection and without passing through a designated port of entry on January 9, 2009.

The immigration officer then created "a record of the facts of the case and

statements made by the [defendant]," in the I-867A: "Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act" form. On January 12, 2009, an U.S.B.P. agent named: Anthony S. Rogers spoke to the defendant in the "Spanish" language and created the "Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act" form[2]. The record shows the officer advised the defendant of the [potential] charges against him and "gave [the defendant] an opportunity to respond to those charges in the sworn statement." *Id*. The defendant provided answers to the agent's questions about his personal & criminal history, his date and place of birth, and his intent and purpose for entering the United States. The defendant then signed the I-867 affidavit acknowledging that each page of the statement was read to him. The defendant denied any fear or concern about returning to Mexico, and denied that he would be harmed if returned[3]. On January 15, 2009, U.S.B.P. agent Anthony S. Rogers served the defendant with the Order of Removal under Section 235(B)(1) of the Act.

The evidence shows the agents complied with the regulations as set out in *Raya-Vaca*. The agent's communicated with the defendant in Spanish. The defendant was provided his rights and was advised of the charges and potential consequences of such charges. The defendant's sworn statement was taken as he was given an opportunity to respond to the charges. The defendant was validly determined to be inadmissible. The defendant was served with a copy of the Order of Removal. The defendant's due process rights were not violated. The defendant fails to make a prime facia showing of "defects in his underlying deportation proceeding." The defendant's motion should be denied.

---

[2] "None" was indicated in the "Interpreter" section of the I-867 form, since the agent spoke to the defendant in Spanish.

[3] Unless an alien professes a fear of persecution or claims to be a lawful permanent resident (LPR), an expedited removal order "is not subject to administrative appeal." *Id*. § 1225(b)(1)(C).

No Plausible Relief therefore No Advisory Required

"To assess whether a defendant has shown that he would plausibly have been granted a discretionary form of relief from removal, [the Court] follow[s] a two-step process. See <u>United States v. Rojas–Pedroza</u>, 716 F.3d 1253, 1263 (9th Cir.2013). "First, we identify the factors relevant to the [agency's] exercise of discretion for the relief being sought." *Id*. Second, "we determine whether, in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of the [defendant's] own case," it was plausible that the agency official considering the defendant's case would have granted relief from removal. Id. (internal quotation marks omitted)." <u>United States v. Raya-Vaca</u>, 771 F.3d 1195, 1206 (9th Cir. 2014).

In order to prevail on a claim that an expedited removal violated due process, an alien defendant must present evidence that an immigration official failed to advise him of some plausible eligibility for relief from removal. *United States v. Leon-Paz*, 340 F.3d 1003, 1005 (9th Cir. 2003); *United States v. Muro-Inclan*, 249 F.3d 1180, 1184 (9th Cir. 2001); *Garcia-Martinez*, 228 F.3d at 963.

1. Withdrawal of Application: the Defendant was lawfully excluded in 2009.

8 U.S. Code § 1225 provides: an alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States. The defendant argues withdrawal of his application was a plausible form relief which could have been granted in 2009. Given the facts and circumstance in 2009, this form of relief is so unlikely it would not have been plausible.

Under 8 U.S.C. § 1225(b), an immigration officer may determine that an alien is inadmissible pursuant to 8 U.S.C. § 1182(a)(7), and order the alien removed from the United States without further hearing or review. The officer must create a "Record of

Sworn Statement" and allow the alien the opportunity to respond to questions, pursuant to regulation, but expedited removals are not subject to administrative or judicial review or appeal. Defendant admissions are not required to find him inadmissible and subject to expedited removal. Based on the facts and circumstances of this case, it's clear a record of removal was created, the defendant had no documentation which permitted lawful entry or presence, the defendant was advised of his rights, the charges, and a likely consequence of deportation. Ultimately, and correctly, the defendant was determined to be inadmissible and was removed for being unlawfully present in the United States under Section 212(a) of the INA. See 8 U.S.C. § 1182(a)(7) (noting that any immigrant not in possession of valid visa, permit, identification card or other valid entry document is inadmissible).

Moreover, the defendant was inadmissible on another ground. The defendant asserts that, as in *Raya-Vaca*, his path to citizenship was straightforward. The defendant is incorrect. In 2009, the defendant had a 2005 conviction for a lewd and lascivious act against a child. The defendant 2005 conviction is a crime of moral turpitude. The defendant was inadmissible pursuant to 8 U.S.C. Section 1182(a)(2)(A)(i)(I). The defendant 2005 conviction is an aggravated felony[4]. The defendant was deportable, pursuant to 8 U.S.C. 1227(a)(2)(i) and (iii). The defendant's path to citizenship was not straightforward[5].

Permission to withdrawn an application for admission is discretionary. Given the seriousness and nature of the defendant's conviction, the outstanding warrant, the

---

[4] *United States v. Baron-Medina*, 187 F.3d 1144 (9th Cir. 1999)

[5] The defendant cited *Blandino-Medina v Holder*, 712 F 3d 1338 (9th Cir. 2013) which permitted a waiver for a person with a conviction of California Penal Code Section 288(a), the same as the defendant. First this case did not yet exist in 2009; secondly, the facts in *Blandino-Medina* are very dissimilar to the defendant's case.

multiple grounds of inadmissibility (and deportability), it is not likely that relief, by way of permission to withdrawn an application, would have been granted to this defendant. An immigration official did not fail to advise him of some plausible eligibility for relief from removal, as none existed. The defendant fails to make a prima facie showing that in 2009 withdrawal of his application would have been plausible, and his motion should be denied.

2. <u>Cancellation of Removal: the Defendant was lawfully excluded in 2009.</u>

8 U.S.C.A. § 1229b: Cancellation of removal; adjustment of status provides:

(b) Cancellation of removal and adjustment of status for certain nonpermanent residents

(1) In general

The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—

(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

(B) has been a person of good moral character during such period;

(C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C.A. § 1229b(1)(a) provides that the Attorney General may cancel removal of an inadmissible or deportable alien if that alien "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." The only information which supports the defendant's self-serving assertion that in 2009 he had been present in the United State for the preceeding

10 years is in his motion. (Dkt. 29 at page 9, line 19-20.)[6] When apprehended in 2009, he provided no U.S. address and defendant claimed to have no close family ties in the United States.

8 U.S.C.A. § 1229b(1)(b) and (c) provides that the Attorney General may cancel removal of an inadmissible or deportable alien if that alien "(B) has been a person of good moral character during such period and (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5). Given the defendant's 2005 conviction, cancellation of removal would not have been a "plausible" form of relief. The defendant's conviction is a crime of moral turpitude pursuant to section 1182(a)(2) and an aggravated felony pursuant to 1227(a)(2). Relief, by way of cancellation of his removal, would not have been granted to this defendant. He did not qualify. An immigration official did not fail to advise him of some plausible eligibility for relief from removal, as none existed. The defendant fails to make a prima facie showing that in 2009 cancellation of his removal would have been plausible, and his motion should be denied.

C. Defendant was not prejudiced.

Finally, even if Defendant had met the three prongs required by law to allow a collateral attack on his 2009 deportation, which the government does not concede, he would still have to show that he was prejudiced by the deportation in order to prevail. Because Defendant has never claimed, nor does he have, any legal right to be present in the United States, he cannot show prejudice.

Prejudice is not presumed just by a showing that a collateral attack can be made. *Garcia-Martinez*, 228 F.3d at 963-64. Rather, the burden is on Defendant to make a

---

[6] The defendant's motion provides that in 2009 the defendant "ha[d] been living in the United States continuously for ten years, had a qualifying relative (his child) and did not have any aggravating felonies." Self-serving statements are inherently unreliable; not only do they not have to be believed but the trier of fact can reach the exact opposite conclusion based on them. *United States v. Cisneros*, 448 F.2d 298, 305 (9th Cir. 1971).

prima facie showing of prejudice and to do so, he must "demonstrate plausible grounds for relief from deportation." <u>US v. Rojas-Pedroza</u>, 2013 WL 2320307 (9th Cir. May 28, 2013). A defendant is only "entitled to the dismissal of his indictment if, upon a review of the record, it appears that an IJ could have concluded that his potential claim for relief from deportation would be 'plausible.'" <u>United States v. Pallares-Galan</u>, 359 F.3d 1088, 1104 (9th Cir. 2004).

Defendant cannot meet even this low threshold. No other potential grounds for relief were available to him. The defendant could not have adjusted his status to remain permanently in the United States because he had no legal status in the United States at the time he was deported, 8 U.S.C. § 1255(a); he was not eligible for cancellation of removal, 8 U.S.C. § 1229b; he was not eligible for temporary protected status (TPS) because he had been convicted of a felony, 8 U.S.C. §§ 1254a(c)(2)(A), (B); and he never indicated any fear of returning or persecution that could make asylum or some other form of protective deferral of his removal a viable or even plausible claim for relief.

**III. Conclusion**

Where, as here, an alien has no plausible claim to relief from deportation, an expedited removal of this sort is not fundamentally unfair nor does it violate a defendant's due process rights. Defendant has articulated no viable claim for relief – whether mandatory or discretionary – that might have been available to him in 2009 when he was removed, and of which an immigration official was therefore obligated to inform him. There was none. The defendant's criminal history and warrant status would not have resulted in a discretionary decision to permit him to withdraw his application for admission. He could not have had his removal canceled because his did not fit the criteria required under 8 U.S.C. § 1229b. He made no claim for asylum, nor did he indicate any fear of persecution or returning to Mexico. Finally, he never claimed to be a United States citizen or have any legal right to be in the United States. That he had not

been formally removed before 2009 do not create a legal right to be in the United States, nor do they create any grounds for relief of which he should have been advised in 2009.

The defendant has not met the threshold requirements under the INA to collaterally attack his prior deportation. The defendant's prior deportation was not fundamentally unfair. There was no violation of the defendant's due process rights. The prior 2009 expedited removal was valid and therefore not subject to collateral attack. The Defendant was not prejudiced in any way.

The defendant's motion to dismiss the indictment should be denied. Further, in light of Defendant's failure to make a prima facie showing or articulate a legal basis on which the Court could dismiss the indictment, the Government requests that Defendant's request for a hearing on this matter be denied.

Respectfully submitted this 30th day of December, 2015.

JOHN S. LEONARDO
United States Attorney
District of Arizona

*s/Kathryn C. Furtado*
KATHRYN C. FURTADO
Assistant U. S. Attorney

Copy of the foregoing was served electronically or by other means on this 30th day of December, 2015 to:

Juan Rocha, Esq.